Citation Nr: 1702646 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 99-11 589A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada


THE ISSUES

1. Entitlement to service connection for a cervical spine disorder, to include as secondary to a service-connected lumbar spine disability.

2. Entitlement to a rating in excess of 60 percent for a lumbar spine disability.


ATTORNEY FOR THE BOARD

T. Berryman, Associate Counsel


INTRODUCTION

The Veteran had active service in the Marine Corps from January 1961 to January 1965.

This case initially came before the Board of Veterans' Appeals (Board) on appeal from a May 2000 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada.

In November 2002, the Board denied the Veteran's claims, which the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In June 2007, the Court issued an order that vacated the Board decision and remanded the claims for compliance with a Joint Motion for Remand (JMR).

In December 2007, February 2009, and April 2016, the Board remanded the Veteran's claims for development consistent with the JMR. The Board is satisfied that there was at the very least substantial compliance with its remand directives. See Dyment v. West, 13 Vet. App. 141, 146-157 (1999). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. A chronic cervical spine disability was not shown in service, cervical spine arthritis was not diagnosed within one year of service discharge, and the weight of the evidence fails to establish that the Veteran's current cervical spine disorder is etiologically related to his active service or was caused or aggravated by his service-connected lumbar spine disability.

2. Ankylosis of the Veteran's entire spine has not been shown; orthopedic and neurological impairments related to the Veteran's lumbar spine disability, when considered both separately and combined, do not result in a rating in excess of 60 percent.




CONCLUSIONS OF LAW

1. The criteria for service connection for a cervical spine disorder have not been met. 38 U.S.C.A §§ 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

2. The criteria for a disability rating in excess of 60 percent for a lumbar spine disability have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and the Veteran has neither alleged, nor demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of the claims at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records (STRs), VA treatment records, and private treatment records have been obtained. Additionally, the Veteran was offered the opportunity to testify before the Board, but he declined.

The Veteran was also provided VA examinations (the reports of which have been associated with the claims file), which the Board finds to be adequate for rating purposes, as the examiners had a full and accurate knowledge of the Veteran's disability and contentions, grounded their opinions in the medical literature and evidence of record, and provided the information necessary to rate the service-connected disability on appeal. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, the Veteran has not objected to the adequacy of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established under 38 C.F.R. § 3.303(b), where a condition in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. The continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established with certain chronic diseases based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service connected disability. 38 C.F.R. § 3.310(a). Secondary service connection may also be established for a disability which is aggravated by a service connected disability. 

In order to prevail on the issue of secondary service connection, the record must show (1) evidence of a current disability; (2) evidence of a service connected disability; and (3) medical nexus evidence establishing a connection between the service connected disability and the current disability. Wallin v. West, 11 Vet. App. 509 (1998).

The Veteran filed his service connection claim for a cervical spine disorder in June 1999, which was denied by a May 2000 rating decision. The Veteran asserts that his cervical spine disorder is due to his active service or alternatively caused or aggravated by his service connected lumbar spine disorder.
 
The Veteran's STRs show that at his January 1961 entrance examination, he had a normal examination of his spine. STRs show complaints for lumbar spine symptoms, but do not show complaints of cervical spine or neck symptoms. At his January 1965 separation examination, he had a normal examination of his spine; however, a lumbar, not cervical, spine strain was noted.

Medical records beginning in 1971 do not show evidence of cervical spine complaints, symptoms, or treatment. The first objective medical evidence documenting a cervical spine disorder is in a February 1991 cervical spine MRI showing degenerative disc disease, which is over three decades after his active service. He later underwent cervical spine surgery.

The Veteran was afforded a VA examination in October 1971. On examination, he had no neck stiffness.

The Veteran was afforded a VA examination in August 2009 for his cervical spine. He reported that he developed cervical spine pain in the 1990s. The examiner noted that he did not have access to the entire claims file. After interviewing the Veteran and conducting a physical examination, the examiner opined that the Veteran's cervical spine disorder was less likely than not caused by or due to his service-connected lumbar spine disability as there was no medical evidence of a nexus between the Veteran's cervical spine disorder and his lumbar spine disability. The examiner reported that the most consistent etiology of the Veteran's cervical spine disorder was gout and the natural aging process as he was not evaluated for any cervical condition prior to the late 1990s.

The Veteran was afforded another VA examination in June 2016. After interviewing the Veteran, reviewing the Veteran's claims file, and conducting a physical examination, the examiner opined that the Veteran's cervical spine disorder was less likely than aggravated by his service-connected lumbar spine disability. The examiner reported that the medical record contained no history of direct trauma involving the cervical spine. The examiner also reported that the Veteran sustained an injury to his lumbar spine many decades prior to his complaints of a cervical condition. The examiner reported that there was little evidence of that the Veteran's cervical spine disorder significantly deteriorated since the 1990s, and therefore, the examiner opined that the Veteran's cervical spine disorder was not aggravated beyond its natural progression by his service-connected lumbar spine disability. The examiner concluded that based on medical literature and the medical evidence, there was little evidence of causation between the Veteran's cervical spine disorder and his service-connected lumbar spine disability.

The Veteran has not submitted any medical evidence supporting his contention that his cervical spine disorder was due to or the result of his active service or due to his service-connected lumbar spine disability. VA obtained medical opinions in an effort to support the Veteran in establishing his claim. The VA examiners collectively opined that the Veteran's cervical spine disorder was less likely than not due to or aggravated by his service-connected lumbar spine disability.

Therefore, after weighing all the evidence, the Board finds great probative value in the VA examiners' opinions. Thus, the evidence fails to establish service connection for the Veteran's cervical spine disorder.

Consideration has been given to the assertions of the Veteran that his cervical spine disorder was due to his service-connected lumbar spine disability. He is clearly competent to report symptoms of pain. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). However, while the Veteran may describe cervical spine pain, he lacks the medical training or qualification to diagnose a cervical spine disability and its etiology. Id. His opinion therefore cannot provide the requisite nexus and does not refute the medical opinions of record.

The record does not contain evidence of a diagnosis of an ongoing chronic cervical spine disability related to his active service, as the first evidence of cervical spine problems do not appear until at least 1999, more than three decades after his separation from active service. In addition, at his separation examination, he had a normal examination of his spine with neck symptoms noted. Furthermore, his STRs do not document any chronic cervical spine diagnoses. As such, the Board does not find that the evidence of record shows continuous cervical spine symptomatology.

The Board also notes that the Veteran is not entitled to presumptive service connection for a cervical spine disorder. The record contains no objective medical evidence of a chronic cervical spine disorder until 1999. In addition, the record does not contain evidence that any neck injury in service resulted in a diagnosis of arthritis within one year of separation from the service. Therefore, the presumption of service connection has not been triggered.

Accordingly, the criteria for service connection have not been met for a cervical spine disorder. That is, the evidence does not show that a chronic cervical spine disorder was diagnosed in service or within a year of service, the weight of the evidence is against a finding that a chronic cervical spine disorder has existed continuously since service, and the weight of the evidence is against a finding that a cervical spine disability was due to or aggravated by a service-connected disability. Therefore, the claim is denied. 

Increased Rating
 
Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

The primary concern for an increased rating for a service-connected disability is the present level of disability. Although the overall history of the disability is to be considered, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In all claims for an increased disability rating, VA has a duty to consider the possibility of assigning staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

In an August 1998 rating decision, the Veteran was granted a 60 percent rating for his service-connected lumbar spine disability under Diagnostic Code 5293 for intervertebral disc syndrome (IVDS) effective February 2, 1998. In November 1998, the Veteran disagreed with the rating assigned, which was confirmed in a May 2000 rating decision.

During the course of this appeal, the criteria for evaluating spine disability changed twice. The first occurred in September 2002, and the second in September 2003. In this decision, the Board will consider the criteria in effect prior to September 2002; the criteria in effect between September 2002 and September 2003; and the criteria effective from September 2003. 

However, the 60 percent rating that was initially assigned is the highest schedular rating available for a back disability under the VA regulations in effect at the time the Veteran's claim was filed, absent a finding of ankylosis of the spine, which has not been alleged in this case. 

However, it is important to note that under Diagnostic Code 5293 required that IVDS be present along with neurologic components such as sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to the site of the diseased disc with little intermittent relief. That is, the Diagnostic Code required both orthopedic and neurologic impairment.

As of September 2003, disabilities of the spine began to be rated under the General Rating Formula for Diseases and Injuries of the Spine, which provides for Rating IVDS based on either orthopedic and neurologic impairment or on incapacitating episodes, whichever method results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.71a. 

However, again, a rating in excess of 60 percent is generally not available under the revised regulations absent a showing of ankylosis. The only exception to this is that the revised regulations allow for orthopedic and associated objective neurologic abnormalities to be rated separately and then combined.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees, the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or if there is muscle spasm or guarding not resulting in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 20 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or if there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted if forward flexion of the cervical spine is 30 degrees or less or there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Regarding ankylosis, the Veteran's VA treatment records do not document any ankylosis of the spine. Indeed, February 1998, February 1999, February 2000, and November 2009 objective medical evidence did not note any lumbar spine ankylosis on examination.

The Veteran was afforded multiple VA examinations. At a February 1998 VA examination, the Veteran exhibit lumbar spine range of motion, although it was reduced, and the examination did not show ankylosis. At a February 2000 VA examination, the examiner noted that there was no change of the Veteran's lumbar spine. 

At a February 2000 private examination for his lumbar spine, again while the Veteran had reduced range of motion, he retained lumbar spine range of motion, the examination did not show ankylosis. 

Afterwards, the Veteran was afforded additional VA examinations. At an August 2009 VA examination, the examiner noted that there was no fixed abnormality of the thoracolumbar spine. Finally, at a June 2016 VA examination, after interviewing the Veteran, reviewing the Veteran's claims file, and conducting a physical examination, the examiner indicated that there was no ankylosis of the spine.

As described, during the course of his appeal, the Veteran has not been shown to have ankylosis of the entire spine. Therefore, a lumbar spine rating in excess of 60 percent is not warranted under the General Rating Formula for Diseases and Injuries of the Spine.

The Notes to the General Rating Formula for Diseases and Injuries of the Spine allow for orthopedic and neurologic impairment from a spinal disability to be rated separately and combined. As such, the Board must assess these two components in order to assess whether the combining of the orthopedic and neurologic manifestations of the Veteran's lumbar spine disability combine to a rating in excess of 60 percent.

Regarding range of motion, at the February 1998 VA examination, the Veteran demonstrated lumbar spine flexion to 70 degrees. In February 2000, he demonstrated lumbar spine flexion to, at worse, 28 degrees. At the August 2009 VA examination, he demonstrated lumbar spine flexion to 70 degrees. At the June 2016 VA examination, he demonstrated lumbar spine flexion to 65 degrees and to 50 degrees after repetitive use testing. However, the examiner indicated that the Veteran had localized tenderness and guarding that resulted in an abnormal gait or abnormal spinal contour, meeting the criteria for a 20 percent rating. 

As described, the limitation of motion in the Veteran's lumbar spine would not warrant an orthopedic rating in excess of 20 percent since the revised regulations became effective, as he consistently demonstrated forward flexion well in excess of 30 degrees. 

The Board acknowledges the fact that the Veteran's back is painful, but even if flexion was slightly limited by pain, pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011) (emphasis added). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40. Here, the Veteran was able to demonstrate painless flexion to 50 degrees at his VA examination in 2016, well in excess of the 30 degree limit required for a 40 percent rating. 

As such, in finding that the 20 percent rating is the most appropriate level under the revised regulations, the Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Although the Veteran had a single examination where his forward flexion was limited to 28 degrees, this occurred prior to the spinal regulations being revised and therefore is not considered in determining the appropriate rating under Diagnostic Code 5243. 

The issue then becomes what the appropriate rating would be for the Veteran's radiculopathy. Radiculopathy of the sciatic nerve is rated under Diagnostic Code 8520. A 10 percent evaluation is warranted for mild incomplete paralysis. A 20 percent evaluation is warranted for moderate incomplete paralysis. A 40 percent evaluation is warranted for moderately severe incomplete paralysis. A 60 percent evaluation is warranted for severe incomplete paralysis with marked muscular atrophy. An 80 percent evaluation is warranted for complete paralysis. 38 C.F.R. § 4.124, Diagnostic Code 8520. 

In addition, the examiner indicated that the Veteran had radiculopathy that resulted in moderate paresthesias and/or dysesthesias of the bilateral lower extremities. When asked to indicate the severity of the radiculopathy, the examiner suggested that the radiculopathy was mild in both lower extremities. VA treatment records were reviewed but fail to provide additional information that would suggest a higher neurologic rating for either lower extremity.

As noted, a finding of mild radiculopathy warrants a 10 percent rating, and therefore the revised regulations do not provide for a back rating in excess of 60 percent, as the 20 percent orthopedic rating and the two 10 percent neurologic ratings do not combine to more than 60 percent. 

As described, the criteria for a schedular rating in excess of 60 percent for the Veteran's lumbar spine disability have not been met and his claim is denied. 

38 C.F.R. § 3.321(b)(1) has not been specifically sought by the Veteran or reasonably raised by the facts found by the Board. As such, there is no basis for extraschedular discussion in this case. See Yancy v. McDonald, 27 Vet. App. 484, 494 (2016).


ORDER

Service connection for a cervical spine disorder is denied.

A rating in excess of 60 percent for a lumbar spine disability is denied.


____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs